UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SCOTT LEE NUTTING,

　　　　　　　　　　Petitioner,

　　　v.　　　　　　　　　　　　　　　　Case No. 20-CV-744

DANIEL WINKLESKI,

　　　　　　　　　　Respondent.

DECISION AND ORDER

**1. Background**

In December of 2011, Scott Nutting met PK on a website. *State v. Nutting*, 2019 WI App 65, ¶ 2, 389 Wis. 2d 376, 936 N.W.2d 410, 2019 Wisc. App. LEXIS 539. PK said she was 18 years old, and they agreed to meet. *Id*. When they met, PK told Nutting she was actually only 14 years old. *Id*. According to Nutting, at this point he told PK to get out of his car and he never saw her again. *Id*. According to PK, they went to a hotel room and had sex. *Id*. at ¶ 3.

Nutting was charged with one count of second-degree sexual assault of a child and convicted following a jury trial. *Id*. at ¶ 14.

The circuit court denied Nutting's motion for post-conviction relief, and the Wisconsin Court of Appeals affirmed his conviction in an unpublished decision. *Id.* ¶ 2; (ECF No. 11-1.) The Wisconsin Supreme Court denied Nutting's petition for review. (ECF No. 11-7.)

Nutting then filed in this court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition he asserts four grounds for relief: (1) the trial court violated Wisconsin law by not requiring a transcription of an audio recording that was played at trial; (2) he was denied the effective assistance of counsel; (3) the state failed to disclose exculpatory evidence; and (4) a new trial should be ordered in the interests of justice.

### 2. Standard of Review

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court is permitted to grant relief to a state petitioner under 28 U.S.C. § 2254 only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). This is a "stiff

burden." *Jean-Paul v. Douma*, 809 F.3d 354, 359 (7th Cir. 2015). "The state court's ruling must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Carter v. Douma*, 796 F.3d 726, 733 (7th Cir. 2015)); *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011).

"Clearly established federal law" refers to a holding "of the United States Supreme Court that existed at the time of the relevant state court adjudication on the merits." *Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir. 2015) (citing *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "A decision is 'contrary to' federal law if the state court applied an incorrect rule—*i.e.*, one that 'contradicts the governing law' established by the Supreme Court—or reached an outcome different from the Supreme Court's conclusion in a case with 'materially indistinguishable' facts." *Id.* (quoting *Williams*, 529 U.S. at 405-06). A decision involves an unreasonable application of federal law if the state court identified the correct governing principle but applied that principle in a manner with which no reasonable jurist would agree. *Id.*; *see also Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A court's application of Supreme Court precedent is reasonable as long as it is 'minimally consistent with the facts and circumstances of the case.'" *Williams v. Thurmer*, 561 F.3d 740, 743 (7th Cir. 2009) (quoting *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999)).

"Even a clearly erroneous state court decision is not necessarily an unreasonable one." *Miller v. Smith*, 765 F.3d 754, 760 (7th Cir. 2014). Thus, a federal court could have the "firm conviction" that a state court's decision was incorrect but, provided that error is not objectively unreasonable, nonetheless be required to deny the petitioner relief. *Lockyer*, 538 U.S. at 75-76.

3. **Analysis**

As the court noted when it screened Nutting's petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases, Nutting's first and fourth grounds for relief raise claims that are strictly matters of state law. (ECF No. 6 at 2-3 (citing *Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003); *Braasch v. Grams*, No. 04-C-593, 2006 U.S. Dist. LEXIS 13390, at *48 (E.D. Wis. Mar. 8, 2006)).) Only violations of federal law, including the United States Constitution, can form a basis for federal habeas relief. Because they raise only matters of state law, the court must deny Nutting relief on his claims that the trial court violated Wisconsin law by not requiring a transcription of an audio recording played at trial and that a new trial should be ordered in the interests of justice.

Although Nutting now asserts that the circuit court's failure to comply with Wisconsin law to create a record of what portions of the statements were played to jury was a violation of due process (ECF Nos. 1 at 7; 5 at 4, 5, 7), the argument is undeveloped. Moreover, Nutting never exhausted any such claim in state court (ECF No. 11-6 (Nutting's petition for review)). Therefore, if the court were to construe Nutting's petition

4
Case 2:20-cv-00744-WED   Filed 06/15/21   Page 4 of 15   Document 20

as raising this issue as a due process claim, it would seem to render Nutting's petition "mixed."

A "mixed" petition is one that contains both claims for which the petitioner has exhausted his state court remedies and those for which he has not. When a petition for a writ of habeas corpus contains even one unexhausted claim, federal law generally prohibits the court from granting the petition, even on a claim for which the petitioner has exhausted his state court remedies. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). Therefore, construing Nutting's petition as raising this issue as a due process claim would generally preclude the court from considering the merits of *any* of his claims.

Alternatively, if no means existed for Nutting to now exhaust this claim in state court, his due process claim would be procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Nutting has failed to show that any procedural default should be excused.

In short, the court cannot consider the merits of these two claims. And, in any event, Nutting asserts he has abandoned them. (ECF No. 19 at 4.)

**3.1. Ineffective Assistance of Counsel**

Nutting's ineffective assistance of counsel claim overlaps with his claim regarding the absence of a transcript of those portions of the recording played to the jury. At issue is a custodial statement that Nutting gave to investigators. In the statement Nutting referred to the fact that he spent time in prison, that he was a registered sex offender as a

5
Case 2:20-cv-00744-WED   Filed 06/15/21   Page 5 of 15   Document 20

result of his prior conviction for attempted possession of child pornography, and that he was on extended supervision. His trial counsel allegedly failed to anticipate that the government would seek to admit the recording in its entirety and thus failed to move in limine to exclude portions where Nutting referred to these prejudicial details. When trial counsel, on the morning of trial, sought to limit the admission of the recording, the court found he was too late.

Claims of ineffective assistance of counsel are governed by the well-established two-prong approach set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hicks v. Hepp*, 871 F.3d 513, 525 (7th Cir. 2017). A petitioner must demonstrate both that his attorney's performance was deficient and that he was prejudiced as a result. *Id.* at 525-26. The first prong "requires that the petitioner demonstrate that counsel's representation fell below an objective standard of reasonableness." *Id.* at 525. "What is objectively reasonable is determined by the prevailing professional norms." *Id.* But there is a wide range of permissible conduct, and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 690). The prejudice prong "requires the petitioner to demonstrate a 'reasonable probability that, but for counsel's unprofessional errors,' the outcome would have been different." *Id.* at 526 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009)).

When a claim of ineffective assistance of counsel is presented in a habeas petition, the petitioner faces "a high hurdle." *Hicks*, 871 F.3d at 525. "The Supreme Court has instructed that under these circumstances, [the federal court] must employ a 'doubly deferential' standard, one which 'gives both the state court and the defense attorney the benefit of the doubt.'" *Id*. (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).

The court begins with the question of prejudice. *See Ashburn v. Korte*, 761 F.3d 741, 751 (7th Cir. 2014). Nutting was potentially denied the effective assistance of counsel only if a potentially prejudicial portion of the recording was played for the jury.

Because the trial court failed to make a record of what portions of the recording were played to the jury, the trial court attempted to reconstruct the record during a post-conviction hearing. The prosecutor did not testify, but as part of his cross-examination of Nutting's trial counsel the prosecutor presented a page of his notes regarding the recording (ECF No. 11-13 at 34):



(ECF No. 11-2 at 149.)

In his questioning of Nutting's trial counsel the prosecutor described these notes as reflecting the portions of the recording that were not played: from one minute to five minutes and 35 seconds; from 25 minutes to 26 minutes and 20 seconds; and from 33 minutes and forty seconds to 35 minutes all allegedly were not played for the jury. (ECF No. 11-13 at 38.) Although Nutting insists that the recording was played in full (ECF No. 5 at 4), he argues that, even accepting the prosecutor's notes as reflecting the omitted portions, certain prejudicial information was played for the jury (ECF No. 5 at 5). Specifically, he points to a statement he made at the 15-minute mark of the recording:

> I felt dirty. I had just got done doing 43 months in prison for something that I did not do. Okay. I never sat down and searched for child porn. I never looked at it. I never tried to find it. I never went on websites. I never even

tried to find it. I explained all this stuff before this all happened. Okay. I'm a bit angry about this. Okay. And I got nailed.

(ECF No. 11-2 at 92.)

At the hearing, the judge (who had presided at the trial) said, "And I'm going to tell you flat out there wasn't one of those statements that ever came in on the record. None." (ECF No. 11-12 at 51.) In his subsequent written decision, the judge concluded that the record "clearly demonstrates the absence of any objectionable or prejudicial statements being played" to the jury. (ECF No. 11-2 at 48.) The Court of Appeals found that the circuit court's "factual conclusion that no prejudicial portions were played is not clearly erroneous." *Nutting*, 2019 WI App 65, ¶ 35.

In the habeas context, "[t]he state court's factual determinations are cloaked with a presumption of correctness, and the presumption can be overcome only by clear and convincing evidence." *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (citing 28 U.S.C. § 2254(e)(1)); *Sanders v. Cotton*, 398 F.3d 572, 584 (7th Cir. 2005). "What this means is that we must be 'objectively convinced that the record before the state court does not support the state court's findings in question.'" *McManus*, 779 F.3d at 649 (citing *Ben-Yisrayl v. Davis*, 431 F.3d 1043, 1048 (7th Cir. 2005); *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003); *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)). "Stated differently, a state court's decision is factually unreasonable only when it 'rests upon fact-finding that ignores the clear and convincing weight of the evidence.'" *McManus*, 779 F.3d at 649 (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)).

Nutting's assertion that the recording was played in full, along with the prosecutor's notes, do not add up to clear and convincing evidence that the state courts' conclusion that no prejudicial information was played for the jury was wrong. Notably, Nutting's trial counsel testified that he did not believe any prejudicial statement, including the statement at the 15-minute mark, was played for the jury because, if they had been played, he would have objected. (ECF No. 11-13 at 35, 37.) He also testified that he believed the prosecutor's notes, as pictured above, were incomplete and there were additional portions of the recording that the prosecutor did not play for the jury. (ECF No. 11-13 at 40-41.)

Against the backdrop of the court's unequivocal finding that the prejudicial portions of his statement were not played for the jury, Nutting's claim to the contrary does not add up to clear and convincing evidence that the state court's finding was unreasonable. Thus, the court is bound to accept the state courts' finding of fact that none of the allegedly prejudicial portions of the recording were played for the jury.

Because none of the prejudicial portions of Nutting's statement were played for the jury, Nutting necessarily was not prejudiced by his trial counsel's alleged ineffectiveness. Therefore, Nutting is not entitled to habeas relief on this claim.

### 3.2. Due Process and *Brady*

Nutting argues that the state withheld certain evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, he argues that the state failed to disclose a

sexual assault examination kit, a statement by PK from a separate investigation, the fact that PK was removed from her mother's care, the fact that PK's mother was charged with a crime, and a written victim impact statement by PK in her mother's case. (ECF Nos. 1 at 8; 5 at 10.) Nutting develops arguments only with respect to the state's failure to provide PK's victim impact statement and, to a lesser degree, the state's failure to disclose the facts that PK was removed from her mother's care and that her mother was criminally prosecuted.

PK was removed from her mother's care, and her mother was charged with failure to act to prevent the sexual assault of a child, in violation of Wis. Stat. § 948.02(3).

> According to the complaint in that case, P.K. told S.K. in June 2013 that she was going to have sex in her home with two men; S.K. told P.K. that she should "just not get pregnant." In the victim-impact statement, P.K. wrote, "I [P.K.] do not listen to my mother and she tryed (sic) to stop me. [A]nd she did not do anything wrong. [I]t was all me." When prompted for her view on sentencing, P.K. asked for probation: "she is a good mother and I am the one that mass (sic) up by lieing (sic), and talking to old men when I was told not to. So I am asking just for probation that is it."

*Nutting*, 2019 WI App 65, ¶ 16.

Nutting contends that this victim impact statement constituted *Brady* material because PK admitted to lying.

> The *Brady* rule holds that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87. "Suppression" occurs when the prosecution "fail[s] to disclose evidence not otherwise available to a reasonably diligent defendant." *Jardine v. Dittmann*, 658 F.3d 772, 776 (7th Cir. 2011). And evidence is deemed "material" only when "a reasonable probability [exists] that, had the evidence been

disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985).

*Bryant v. Brown*, 873 F.3d 988, 998 (7th Cir. 2017).

The Court of Appeals held, "We fail to see how the redundant, effectively cumulative evidence of the impact statement would be favorable to Nutting." *Nutting*, 2019 WI App 65, ¶ 48.

The court presumes that PK's victim impact statement was favorable to Nutting's defense in that it could be used to impeach PK. *See Goudy v. Basinger*, 604 F.3d 394, 398 (7th Cir. 2010); *see also Giglio v. United States*, 405 U.S. 150, 154 (1972). But, consistent with the finding of the Court of Appeals, in no way would the trial have been different if it had been disclosed to Nutting. At trial PK repeatedly acknowledged she was a liar. She lied about her age. (ECF No. 11-9 at 150-51, 156, 158, 176, 186-87.) She lied to her mother as to where she was going when she met with Nutting. (ECF No. 11-9 at 185-86, 192-93.) And she repeatedly lied to investigators. (ECF No. 11-9 at 185, 186, 189, 190-91, 192, 197.) One more instance of her acknowledging that she lied would have been cumulative and not have made any difference at trial.

Nutting also argues that his due process rights were violated by the state's failure to disclose that PK was removed from her mother's care and that her mother was being criminally prosecuted for her failure to protect PK. According to Nutting, PK and her

mother were motivated to cooperate with the state in the hope that it would curry favor and eventually lead to PK being returned to her mother's care. (ECF No. 12 at 3.)

But if PK wanted to tell a story that would be most helpful to her mother and likely lead to PK being returned to her mother's care, this could be most readily accomplished by *denying* she had sex with Nutting. After all, PK's removal from her home and her mother's criminal prosecution both arose from her mother's failure to prevent PK from having sex with Nutting and others. (ECF No. 11-9 at 134, 214-15.)

But, more importantly, Nutting's due process rights were not violated by the state's alleged failure to disclose earlier that PK had been removed from her mother's care. The fact that PK was removed from her mother's care was adduced at trial during the state's direct examination of PK (ECF No. 11-9 at 134-35), during the state's direct examination of her mother (ECF No. 11-9 at 214-16), and even referenced in the state's opening statement (ECF No. 11-9 at 110).

"The *Brady* rule is not a rule of pretrial discovery…; under the *Brady* rule… 'disclosure even in mid-trial suffices if time remains for the defendant to make effective use of the exculpatory material.'" *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) (quoting *United States v. Higgins*, 75 F.3d 332, 335 (7th Cir. 1996); citing *United States v. Allain*, 671 F.2d 248, 255 (7th Cir. 1982)). Thus, even if the court were to accept Nutting's argument that the fact that PK was removed from her mother's care was exculpatory, he

was not denied a fair trial. He knew of the information in time to cross-examine both PK and her mother about it and to address it in his closing argument.

Therefore, the court must conclude that Nutting is not entitled to habeas relief on his due process claim.

**4. Conclusion**

To prevail on his ineffective assistance claim, Nutting needs to present clear and convincing evidence that the trial court was wrong when it found that none of the alleged impermissibly prejudicial portions of his statement were played to the jury. But he is hard-pressed to do so because the trial court failed to make a record of what was played to the jury. Nutting's own assertions as to what happened, coupled with the prosecutor's notes, do not constitute clear and convincing evidence.

Nor can Nutting show he is entitled to habeas relief on his due process claim. PK's victim impact statement was redundant and cumulative and, therefore, would not have made a difference. And the fact that PK was removed from her mother's care was known to Nutting in sufficient time where, if it were relevant, he could have made use of the fact at trial. Therefore, the court must deny Nutting's petition for a writ of habeas corpus.

Finally, the court concludes that Nutting has failed to make a substantial showing of a denial of constitutional right. *See* 28 U.S.C. § 2253(c)(2); Rule 11 of the Rules Governing Section 2254 Cases. Therefore, the court will deny him a certificate of appealability.

14
Case 2:20-cv-00744-WED   Filed 06/15/21   Page 14 of 15   Document 20

**IT IS THEREFORE ORDERED** that Nutting's petition for a writ of habeas corpus is denied and this action is dismissed. The court denies Nutting a certificate of appealability. The Clerk shall enter judgment accordingly

Dated at Milwaukee, Wisconsin this 15th day of June, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge